May it please the Court. My name is Benjamin Gould, and I represent the appellants, three small businesses that I'll be calling the borrowers, just as we do in our opening briefs. A good portion of this appeal really just turns on application of the familiar summary judgment standard to events that occurred in January and May 2007. And the question just simply is whether a reasonable fact finder viewing the record in the light most favorable to us could reasonably conclude that the lender didn't receive regulatory approval to use the Wachovia Cost of Savings Index with existing loans. I think that to answer that question, no, in other words, to get to where the district court got to, you've got to utterly discount three really powerful pieces of evidence. The first piece of evidence is the letter from the OTS itself in January 2007, which explicitly interprets the notice from the lender to be seeking approval as to existing loans and says nothing about new loans. You've got to essentially believe that that statement is meaningless to get to where the district court got. The second really powerful piece of evidence is the December 2006 letter from the lender itself, and that really, that letter you could say fails to do two things. The first thing it fails to do is it fails to specify what index is going to be substituted for use with existing loans. And then the second thing it fails, well, I suppose the second thing it does is it affirmatively suggests that it's going to be deferring that approval, that request for a non-objection to a later point. If the letter that Wachovia sent to the OTS, if the district court was correct in determining that it explained a change to the Wachovia, how do you say that, COSI? COSI. COSI, for both new and existing loans, then whatever OTS said or didn't say would be irrelevant, right? Because the regulation says as long as there's no objection, then it's deemed approved. Well, but it's the OTS's non-objection that counts. I mean, it can't be that the subjective intent of the regulated firm in submitting a letter is what controls. But there was no, I thought it was agreed that there was no objection from OTS to the letter. So if the letter is correctly interpreted as applying to new and existing loans, then it would be deemed approved under the reg. Well, but not if the, not if what OTS believed was that the letter to which it was responding was seeking non-objection as to only new loans, because otherwise that would mean that a regulated firm could submit, say, a scrawl that in its subjective opinion was a request for a non-objection to a certain kind of index, and that would constitute, that would constitute non-objection. If it didn't clearly or if it didn't address both, but the district court here found that it did, that the letter addressed both new and existing loans. And so if OTS says nothing, then by force of law, it's deemed approved. So if they were hiding the fact that they wrote existing loan in like a different language or in cipher or something, I can understand your point, but if, in fact, the district court correctly read the letter as applying to both, then it's deemed approved for under the regulation. Well, let's talk about the December 2006 letter, because I don't think the district court was right about that. I mean, you don't have to agree with me that the only plausible reading of the letter is that it was asking for approval as to new loans only. To reverse here, all one has to acknowledge is that the letter can be reasonably read both ways. And if you actually read the, if you read the second paragraph under the heading Introduction of New Loans, it doesn't actually specify what cost of savings index is going to be used in this index substitution process for existing loans. I mean, it doesn't actually say that. And so I guess I just don't understand how, as a matter of law, it can only be read to cover both new and existing loans. So we're reviewing the district court. There was a little confusion I thought in the brief about is this a legal issue or a factual issue, but we generally determine that interpretation of a writing is a matter of law, so we'd be reviewing it de novo as opposed to the intent of the parties or the understanding or factual issues. So would we be reviewing this de novo, the interpretation of that letter? Well, I mean, I would analogize it to any appeal in which a court determines that a writing is ambiguous. In a normal contract appeal, for example, if a court determines that a writing is ambiguous, then typically that writing, the meaning of that writing is deemed an issue of fact and not an issue of law. Well, but I think, I mean, isn't de novo better for you? Well, yeah. I mean, I certainly acknowledge that the standard of review here is de novo, but what I heard Judge Ikuta asking me is, is it a question of fact or a question of law? And if it's a question of fact, which I think it is, and I direct the court's attention to the United States v. Brunskill, which we cite in our brief, which holds that an issue of whether a regulated entity actually got approval is a question of fact. Well, but here we know that if it clearly stated that it was changing the COSI, then it did get approval because there was no objection. So by force of law, we know it would be deemed approved. So the only question then would be, did Wachovia clearly state that to the regulator? And I don't know what evidence is presented to say what language means. So I can understand the intent of the parties, but I don't know how you present evidence as to what language means. So it seems to be just an interpretation of that language in the letter. That's what I'm trying to understand. Right. Well, I guess I would, I mean, I guess I would say that typically when there's, when a particular piece of writing can be read by reasonable people in more than one way, just under the summary judgment standard, that goes to the jury. I mean, because after all, what we're not talking about, we're not talking about, say, a statute or something. I mean, yes, I agree with you that if we were talking about that, that would be a clear question of law for this court to determine. But we're talking about a writing by a private party whose meaning is quite unclear. So I... Well, we didn't think it was unclear, and we looked at it, and the district court didn't think it was unclear. Right. Well, I mean, if... So is your mere assertion that you think it's unclear enough to defeat summary judgment? No, not... That's what I'm hearing you say. No, certainly not just because we assert it's unclear, but... So if we think it's clear, then you lose. Is there another reason you would win if we said Wachovia clearly informed OTS that it was using the Wachovia COSI for both new and existing loans? Well, I would go back to what I stated earlier, which is that it's got to be, I mean, it is OTS's non-objection that constitutes the regulatory approval in this case. And surely it's OTS that is the ultimate... But you're still not answering Judge Akita's question. Okay. Yeah. If we think it's clear... Right. ...do you lose? No. Or is there an alternate ground that you can win on? No. We don't lose for the reason I was just stating. It's because what OTS's interpretation of that notice is, is that. That's what controls. Why is that? Because the regulation just says as long as there's no objection, then it's deemed approved. So what OTS might or might not have been thinking, I mean, there was plenty of evidence of the party's behavior after the fact that the district court thought was clear that OTS knew that the Wachovia COSI applied to both new and existing old loans. There were calls with Dimick and other staff members. So there's plenty of evidence that OTS thought that it applied to both. But isn't that irrelevant under the regulation? What OTS might or might not have thought if it was clear what the Wachovia said? Well, no, for the same reason that... Is there a regulation that says that? Or is there some statute? Or what would you be basing that on? That's what I take to be the meaning of the regulation. That if it's OTS's own non-objection that controls, it's got to be OTS's interpretation of the meaning of that non-objection that controls. Okay. There's nothing in the regulation suggesting that. It's just a bright line rule. I mean, there's nothing in the regulation explicitly stating what I just stated in so many words. I mean, that's correct. It seems to me like it's a binary decision. Either they object or they don't. And then if they don't, game over. But you're now saying... True. ...the non-objection comes into this murky world of interpretation. Well, I mean, I guess what I would say in response to that is that it's binary. And the best evidence we have is that OTS took the notice not to be a notice with respect to new loans. I'm going to reserve the rest... I need to ask... Oh, sorry, of course. ...one more question. Oh, of course, please. I'm sorry. Yeah. Well, let me ask you about the preemption. Yes. As I understand it, the district court got rid of 1, 2, 3, and part of 6 under preemption. Right. And as I read your opening brief, it's only clause number 1 that you've appealed with respect to preemption. Is that correct? Well, I suppose we've also appealed the non-approval claim. Because, remember, they argued below. But, yes, I see your point. Yes. But in terms of the... That's correct. ...preemption. And that claim was disposed of by the district court, claim number 1, or cause of action number 1, under the preemption ruling. Is that right? That is absolutely right. Yes. And your argument now is basically you can't... There's no basis to preempt if it's basically a contract claim. That's right. I mean, the preemptive regulation states that it preempts requirements reported to be imposed by state law. And as we said in our briefs, the Supreme Court's case law indicates that when a regulation or a statute talks about requirements imposed by state law, it doesn't mean self-imposed, voluntary requirements imposed by contract. And actually, I'd just like to say one thing about why we've preserved that claim. Well, I want to ask you about that. Yes. Because it seems to me that there's an argument that the way that, okay, your complaint does not clearly assert a claim that Wells Fargo's COSI was not actually used. And even if the complaint did assert that, if we're really generous, then it doesn't, to me, that the borrower's opposition to Wells Fargo's motion to dismiss did not adequately present this claim for the district court's consideration. And the order dismissing the borrower's claim is preempted by, I don't know, do we say HOLA or HOLA? HOLA, I guess. I don't know. I've asked people before, and no one seems to know. But, okay, so HOLA, it makes, so your claims, the order dismissing the borrower's claims as preempted by HOLA makes clear that the court did not consider that. So I don't know why you haven't waived it. Well, actually, I think just the opposite is true, that our opposition to the motion to dismiss makes even clearer exactly what our claim is. I mean, it says more than once that we are alleging that Wells Fargo's cost of savings index was not even based on the certificates of deposit it purported to be based on. And we cite to the record several places. But your claim that it was not actually used, as you're saying, where is that in your complaint? And where did you put that argument to the district court when the district court dismissed? We don't use that phrase below. Correct. But we make the substance of our claim. It's not my understanding that to preserve a claim, you have to incant the exact same words you state below.  Yeah. Right. That's right. I mean, not actually used and artificially inflated means the same thing. It was not actually used because it was artificially inflated. Thank you very much for your time. Thank you. Good morning, Your Honors. May it please the Court. Robert Collins Little on behalf of the appellee and the cross-appellant, Wells Fargo. There are two issues before the Court today. The first issue is whether or not Wells Fargo and Wachovia obtained regulatory approval for use of their two cost of savings indexes. And the second issue is whether or not an actually used claim was sufficiently alleged, preserved, and adjudicated by the district court. With respect to approval, I think Judge Okuda's questioning makes clear that under the applicable regulation 12 CFR 560.35 D3, in the absence of any significant issue of law or policy or supervisory concern expressed by the regulators, the COSI is deemed approved. That is the strongest evidence of approval is the silence in the record. There is not a single objection or expression of regulatory concerns. Two, with respect to the letter itself, the first paragraph indicated that Wachovia would begin use of the Wachovia COSI as soon as possible for new loans. The second paragraph indicated that after using the Wachovia COSI for new loans, World would undertake an index substitution process for existing loans that use the current COSI. And finally, the third paragraph indicates that World would submit a substitution plan to the OTS for review and comment. All of these things happened. All of the paragraphs that I just indicated, Your Honors, appear under the umbrella heading introduction of Wachovia COSI. If there was the least bit of a lack of clarity there, the heading itself would suffice to provide clear notice that we are seeking approval for the use of the Wachovia COSI. They want us to disregard the clear import of this letter altogether. They also want the court to disregard the conduct of the regulators in response. True to our promise in the second paragraph of that letter, in May of 2007, we did submit a substitution plan with a copy of the notice that we proposed to send to the borrowers. In receiving that May 2007 correspondence, the OTS never said, what is this Wachovia COSI that you plan to submit in connection with existing loans? We thought that you only meant to submit it with new loans. There is no such question. It is clear from the record that the regulators approved the Wachovia COSI for its use in both new and existing loans. The contention that the Wells Fargo COSI was not approved because somehow through a retroactivity analysis we look back at the OTS and they didn't approve it is audacious. The OCC is the oldest regulatory agency in the United States government. Its duty is to examine banks for the safety and soundness of the economy. The idea that the OCC would somehow not catch the use of this COSI and would deem it not approved is just flatly incorrect. With respect to the not actually used claim, I would be the first to agree that the plaintiffs do not need to encant magic words, as they say, in order to submit that claim or for that to be a claim. But they do have to sufficiently allege a claim. They point to paragraph 28, and there is one sentence in that paragraph, your honors. And in that sentence, the plaintiffs allege, quote, however, as set forth more fully below, the rates charged in 2010 and 2011 often did not track even this higher CD-based index. As set out more fully below, the allegation itself is so nondescript, it cries out for more description. And in fact, it says that this is the preview. You will see these allegations in our complaint, and they never surface. The cluster of allegations thereafter, your honors, that they point to, specifically paragraphs 57 through 60, which are in the general allegations, and 82 and 83, which Judge McEwen correctly pointed out is in the first cause of action for breach of contract, do not support a not actually used theory. In fact, paragraphs 82 and 83 — Let me stop you there. Yes, your honor. The issue on preemption is not theory. It's what is the cause of action. Yes, your honor. And so if you go to the complaint and you look at what the first cause of action is, which is this breach of contract on the interest rate calculation, it seems that the parties are arguing past each other. You're saying, well, they call it this different theory, not actually used, and they say, well, yeah, that's what happened. I mean, the contract says you shall do this, and they didn't shall do that. And we call that — they didn't use it. But that's — it's really what's in the complaint as to the cause of action, isn't it? I would agree. It's what is in the complaint as to the cause of action. So when you go to the complaint, what is the cause of action? The cause of action is a purported duty to adjust the interest rate to match the identical accounts, deposit accounts, that the GW Cozy, the original Cozy, used. They take issue with the fact that the GDW Cozy, the original Cozy, was based on all deposit accounts. And when I say GDW, that was the parent company of World Savings. Why did they argue the motion to dismiss? When the district judge dismissed, saying that claim was preempted under HOLA, did they say anything about, well, no, we're alleging not actually used, and that can't be? What was said there? They did not, Your Honor. In three places in their opposition to their motion to dismiss, they summarize their allegations. And in one place in their motion to dismiss, they make a reference to this sentence that I referred to in paragraph 28. But there is nothing in their motion to — excuse me, in their opposition to the motion to dismiss which indicates that this is a separate claim. And, in fact, if we look at the — Well, you know, it's kind of — to me, all that's irrelevant. And I'll just tell you why, and then you can tell me why I'm wrong. Okay. What — when you're looking at a preemption, you have a cause of action that's laid out here. And the question is, is there some kind of underlying state law that would be preempted? And it seemed to me that the district court was kind of looking inside the contract, which I'll call the cause of action, rather than looking at state law. And it's pretty clear under preemption analysis, you are to look — you have to see if there's some kind of statute, regulation, court decision or whatever. So it seemed to me that the district court made a legal error in the way it went about analyzing this, because it's basically a contract claim. And what's inside that contract and what the parties agree to is not something that's preempted by state law. So that's why I'm having trouble. I think he just maybe missed a step in the preemption analysis. So I'm interested in your comment on that. I have two responses, Judge McKeown. The first response is that there were two — well, three sets of claims in total. Two sets of those claims involved what we call mimic, or the duty to adjust the interest rate to reflect all these deposit accounts. That's one. And two, transparency. The duty somehow that the borrowers would be able to verify the COSI by what they said looking at publicly disseminated data. Those two claims are not pressed on appeal. And those — I mean, he said the only claim left on appeal with respect to preemption is cause number one. Is the — The breach of contract claim on the interest rate, which they call breach of contract interest rate. So this transparency and the substitution are off the table as far as I understand. And you probably agree with that at least. I not only agree with that, but I would respectfully suggest that also the duty to adjust the interest rate to conform to a specific set of deposit accounts is also off the table. But they're not appealing the — so I guess there's a question. I'm not sure this is before us. But if I understand Judge McKeown's questions, did the district court misapply HOLA in holding that the first cause of action was preempted under HOLA, that there was HOLA preemption? And the way the district court analyzed that claim was as a claim for, you know, what was it, interest rate adjustment or mimic or one of those. Yes, Your Honor. And they're not specifically raising — they're saying they actually raised a different claim is how I understood their briefing. But the threshold question, if I'm understanding Judge McKeown's line of questioning, would be did the district court misapply HOLA in saying that the first cause of action, as they originally argued it, is actually preempted, so that that was an erroneous ruling by the district court? Directly to that question, Judge Akuta, I think the best answer is this. The appellant's argument does not support their position that their claim is not — is preempted. Rather, it goes to whether or not Wells Fargo and Wachovia before it abided by the OTS or the OTC — It doesn't answer the question. I'm sorry, Your Honor. And that's why the briefs talk past each other. You move to dismiss all these claims. The district court says claim number one, two, three, and maybe part of six off the table due to preemption. When you move to dismiss, they came back and said, no, no, these are not preempted, and here's the reason. Claim number one is on appeal now as to whether or not it was properly preempted. Was the district court correct as a matter of law, yes or no? And so to keep arguing about, well, they say this and they say that about the claim, we have to look at what did the district court dismiss. And then I look to their brief on appeal and I see that they have preserved as only as to the first cause of action. So I'm not even looking at the others. So we're back to the question is when the district court is analyzing the first cause of action, did it make a mistake on how it benchmarks preemption? The district court looked at Wells Fargo's adherence, or I should say Wachovia's and Wells Fargo's adherence to the OTS regulation. They are attempting to bootstrap a breach of contract claim onto the inquiry of whether or not Wells Fargo adhered to the regulation. Under this court's decision in Martinez, which is cited in the motion to dismiss at page SER 738, and the site is 598 F3rd 549 at page 556, this court said that such an inquiry, besides being an apposite to the issue of preemption, is fruitless because the regulation of a national bank's adherence to the OCC regulation is within the exclusive purview of the OCC. That doesn't answer the question if we agree in a private contract to do A, B, and C. That's different than if a regular has a regulation on A, B, and C because the private contract is really removed from, say, an injunction against the agency or whatever, or the bank for not complying with. I can take the essence of a regulation or something else, and I can put it in my contract, and that's not preempted generally, so why is this different? Well, Your Honor, I think some courts have held that breach of contract claims that are gloss, that simply mirror the regulation, are in fact preempted. For example, Hagerty, I believe, held that, which is cited in the Metzger decision, which is in a footnote of our brief. Some courts have held these sorts of breach of contract claims as applied under this court's analysis in Sylvis to, in fact, be preempted. But what's the state law that's preempted here? It's the application of the breach of contract claim under Washington law, the application of that contract, breach of contract. State contract law? What's the state law? Is it state contract law? Yes, Your Honor, it's the common law, the state contract common law. So I'm not sure that there was an argument. I saw that argument as about the first cause of action as being what actually was being argued or raised to the district court. But let's take that out for a moment and say they're just arguing the first cause of action just as they argued it to the district court, and the district court said that's preempted under HOLA. Is that a, and I don't remember seeing much argument about that, but is that supportable? Is that a correct ruling? And what case is best? Is it Hagerty or some other case? Your Honor, I believe it would be Metzger, which is cited in our brief, Hagerty, which is cited on Metzger. I believe that the district court's ruling itself was correct on that cause of action. Now, I think the court is clear that the underlying premise of this examination is that the breach of contract claim was preserved the way that they are describing it was preserved. I don't concede that. We understand that. Thank you, Your Honor. My question is because if you read the preemption statute, it really conflicts with what you're saying is it preempts state contract law. It doesn't say that. Preemption statute says that it preempts state statute, regulation, ruling, order, or judicial decision. And that's where I'm having some collision with your argument because none of those things are present here. I think that, Your Honor, that a judicial decision is itself a reference to common law. I think that we can assume that when it re- Oh, no, no, no. That would be like saying, well, everything is preempted. So do you have a federal or state case that would fall into that category? What judicial decision are you pointing to? Well, I'm pointing to Silvis, Metzger, Haggerty. We'll take a look at those, but I think that you're kind of mixing and matching between what exists normally within a state as the state's common law versus what's preempted here. But I'll take another look at all your cases. Thank you very much, Your Honor. Your time has expired. Thank you. Wait, we have another question. Yes. I'm sorry. If I could have leave from the presiding judge. No problem. On your attorney's fees? Yes, Your Honor. All right. It's a matter of Washington law, right? Yes, Your Honor. Whether you're entitled to it, correct? Yes, Your Honor. But you cite a lot of other cases that aren't necessarily Washington law. And so I'm struggling with this in the sense that I think I get your argument that if people want to argue about the COCES or something like that, it makes it really hard to enforce the notes. But they're not in default here, correct? Correct. And so if it's ambiguous and you're the drafter, if I can't really ‑‑ does that go against you here? The ambiguity I think we would be looking at it because section 9D appears under the heading borrower's default. But we don't look ‑‑ we only look to the heading to circumscribe the contractual provision if the provision itself, that is section 9D, is itself ambiguous. And it uses the disjunctive, Your Honor, collection or enforcement. And under Washington revised code 4.84.330, which provides for a two‑way attorney's fees with respect to when there's an attorney's fees provision in a contract, it goes both ways. Had the borrowers said that we have defeated the notes because the interest rate has not been charged correctly and we're entitled to collection of damages, they too would be requesting attorney's fees and they would be pointing to section 9D to do so. Well, I guess you both would. But the question is, is it so clear that that's what it means or does ‑‑ Okay. That's just ‑‑ If Your Honor ‑‑ We don't have a Washington case that tells us that's how it's interpreted, right? Yes, Your Honor, I would, as far as the attorney's fees issue, I would submit on the briefing on that. Okay. Thank you. All right. Thank you very much, Your Honors. Thank you. You have a minute, everybody. I think it's true to some extent that the briefs are talking past each other, but that's because I think the key disagreement on whether we preserve this claim is, you know, how you look at the first cause of action. It's true. It is true, and I admit it, that part of that claim is that we alleged that you have to use the index for all deposits rather than just for CDs. But that's not the only part of the claim. And if you turn to paragraph 82, the first sentence of that is, defendants breach their contracts with plaintiffs and class members by charging interest rates not based on any discernible index. Now, that can't be the ‑‑ Then it goes on. Could you explain that? And then it goes on to say using indexes that did not, that did and do not reflect the weighted average of the interest rates. So you say no discernible index because they're using indexes. Well, and then it says, and by adjusting interest rates in a manner that does not accurately reflect the correct interest rates. That's the ‑‑ Correct average rate is what it says, which seems to be something else. So the weighted average of the interest rates payable on all deposit accounts, which was your argument to the district court. No, I mean, I think if we had said, if we had meant average rates on all deposit accounts in that phrase, we would have said average rates on deposit accounts. What we're saying in that last phrase is correct average rates on even the CDs. I would also just ‑‑ You didn't say on even the CDs. That's, I guess, the problem. Okay. All right. Thank you. Thank you. Thank both counsel for your argument. There's a lot of briefs, a lot of cases, and we've read them all. We'll look at them again. So we appreciate the arguments this morning. The case of Campidoglio v. Wells Fargo is submitted.
judges: McKeown, Callahan, Ikuta